BETTIS ELECTRIC SHOP v. CHAPMAN DRUG COMPANY.

Eastern Section. January 18, 1930.

Petition for Certiorari denied by Supreme Court, March 5, 1930.

Testerman, Burnette & Bell, of Knoxville, for appellant.

John R. King, of Morristown, for appellee.

PORTRUM, J. The plaintiff filed its bill to collect the balance due on an account and the defendant filed an answer denying the account. The only question presented is:

"Is the Chapman Drug Company liable for commission on the trade of a refrigerating plant to the complainant who claims to have been the person that introduced the prospective purchaser to the salesman of the Chapman Drug Company?"

The complainant maintains a store and workshop in Morristown, Tennessee, handling and selling electrical apparatus and general electrical equipment. As a part of its line, it handles electric refrigerating plants. It carries a small stock for use in residences, but does not carry large plants used generally and known as commercial jobs. These it obtains through an arrangement with a dealer in the City of Knoxville and sells under a commission basis. This

arrangement was with W. P. Biddle, of Knoxville, Tennessee, who carried these commercial plants, and the complainant obtained a prospect in Hale Brothers, of Morristown, Tennessee, who deal in wholesale fruit and vegetables, and who desired to install a large refrigerating plant for the preservation of their merchandise. Not having the plant in stock, the company through its president and general manager, Mr. Bettis, communicated with its associated firm in Knoxville, W. P. Biddle, for the purpose of procuring the plant through him and selling it upon a commission basis. At the time Hale Brothers were negotiating with a firm in Johnson City, as well as Mr. Bettis in Morristown.

When Bettis 'phoned Biddle and told him he had a prospect and the character of plant wanted, Biddle informed him that he did not have the plant but would confer with the Chapman Drug Company, who handled plants of this character. Biddle then 'phoned the Chapman Drug Company and told this firm of Mr. Bettis and his prospect in Morristown. W. T. Zion, manager of the refrigerating department of the Chapman Drug Company, called Mr. Bettis over the telephone and told him he would send his representative to Morristown that afternoon at five o'clock to see him in regard to this matter. Mr. Bettis did not tell Mr. Zion the name of his customer and he was not asked. The only arrangement made over the 'phone was that the Chapman Drug Company were sending their representative to meet Mr. Bettis in his place of business at five o'clock that afternoon. The representative met Mr. Bettis when Bettis called his attention to the fact that he sold these plants on a commission under an arrangement with Mr. Biddle, and asked him in regard to his commission upon the sale of this plant. He was assured by the representative that he would be taken care of. After this assurance, Mr. Bettis took him to see Hale Brothers and negotiations began. The representative, Mr. R. H. Miles, negotiated with Hale Brothers for some time but finally consummated the deal, and sold and delivered the plant. But before the closing of the trade, one of the Hale brothers was in Knoxville and called on Mr. Zion and asked him if his representative, Mr. Miles, had authority to make the sale, when he was assured that Mr. Miles was in charge of the refrigeration department and had absolute authority to make or close any contract with respect thereto and urged Hale to close up the contract with Miles. Hale stated that he then mentioned the matter of Bettis to Miles, stated that he had been dealing with Bettis, and wanted to know that Bettis would be taken care of, and Miles assured him that he would be.

After the sale of the plant, Bettis made out a statement for his commission and sent it to the Chapman Drug Company. This was ignored. The claim was later taken up with this company, when they denied that they were due Mr. Bettis anything as commission

for the sale of this plant, and stated that their representative, Mr. Miles, had no authority to make an agreement with him to pay him commissions. Nothing was done about the matter because of the refusal of the Chapman Drug Company to pay, until the institution of this suit.

The defense of the suit is that the agent was not acting within his authority nor within the apparent scope of his authority in making the agreement, and if any agreement was made it was between the agent and Mr. Bettis, whereby Bettis was to look to the agent and not to the company for his compensation.

The Chancellor was of the opinion that the complainant was entitled to recover the commission under the facts of the case, and granted him a decree for $125, the amount sued for. From this . decree, the Chapman Drug Company has appealed to this court. and assigned error. The bill raises the question before quoted from the complainant's brief.

We are of the opinion that the Chancellor was correct in his conclusions of law and that the Chapman Drug Company is indebted to the complainant in the amount decreed.

In the first place, we think that when Biddle 'phoned to the Chapman Drug Company and told them of his prospect, which was given to him by Bettis, that the Chapman Drug Company in taking over the prospect who had been dealing with Bettis, assumed a status with Bettis similar to that of Biddle. In other words, they stepped into Biddle's shoes, reaped Biddle's benefits, and assumed his obligations.

In the second place, when they sent their agent to see Bettis for the purpose of obtaining this information, they gave him the necessary power and authority to make such representations and agreement with Bettis as were necessary to procure for them the prospect. He could have had no other purpose in calling on Bettis, and it was necessary that he have this power in order to accomplish the purpose of his visit. The company could not restrict his powers and then deny the obligations necessarily assumed.

"Very obviously, the principal is liable for all such acts and statements of his agent as he may have expressly authorized; and this includes, by implication, whether the agency be general or special, all such powers as are necessary and proper as a means of effectuating the purpose for which the agency was created. Being clothed with power to do a particular act, the agent will be deemed to have also whatever authority attaches to the doing of the act, or is necessary to its performance." Ruling Case Law, Volume 21, pages 853-4.

In the third place, the purchaser, who was interested in seeing that Bettis was protected, made direct inquiry of Mr. Zion in reference to the agent's authority and was told that he was the manager of the refrigerating department and had full authority to make the

deal. He then asked Mr. Miles if Mr. Bettis would be taken care of and was assured that he would be. This is evidence that the commission of Mr. Bettis was an element in the contract of sale and was a concession or demand that Hale Brothers had a right, if they should desire, to insist upon and, having agreed for a commission to Mr. Bettis as a part of the contract of sale, the Chapman Drug Company is in no position to insist that their representative had no authority to include this as a term of the contract.

For these reasons, we are of the opinion that there is no error in the decree of the lower court, and it is affirmed. The appellant and the sureties on his appeal bond will pay the costs of the appeal.

Snodgrass and Thompson, JJ., concur.